# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

CASE NO.

STEVEN MITCHEL, individually
and on behalf of all others
similarly situated,

      Plaintiff,

vs.

VEGASSPORTSCONSULTANTS.COM and
PERFECT PRIVACY, LLC,

      Defendants,

_____/

## CLASS ACTION COMPLAINT

Plaintiff, STEVEN MITCHEL (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against VEGASSPORTSCONSULTANTS.COM ("Vegas") and PERFECT PRIVACY, LLC ("Perfect Privacy") (collectively "Defendants") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      STEVEN MITCHEL brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.1C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself

1

and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.      Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010)

4.      In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.   TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5.      Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13. See also, Mims, 132 S. Ct. at 744.  5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

6.      The Ninth Circuit recently affirmed certification of a TCPA class action remarkably similar to this in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)

## **JURISDICTION AND VENUE**

7.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including the transmission of the subject unauthorized text advertisements.

9.      The Court has personal jurisdiction over Defendants because they conduct business in this state, market their services within this state, and have availed themselves to the jurisdiction of the State of Florida by transmitting the subject unauthorized text advertisements to Plaintiff and Class Members in this state.

## PARTIES

10.     Plaintiff's domicile is in Broward County, Florida.  Plaintiff is a citizen of the state of Florida.

11.     Class Members are citizens of the state of Florida and throughout the United States.

12.     Upon information and belief, Defendant, Vegas, is a Nevada company and is citizen of Nevada.  Defendant does business in Florida and through the United States.

13.     Upon information and belief, Defendant, Perfect Privacy, is a Florida company and considered a citizen of Florida. Perfect Privacy's principle place of business is located at 12808 Cran Bay Pkwy West, Jacksonville, FL 32258. Perfect Privacy lists its registered agent as CORPORATION SERVICE COMPANY, 1201 Hays Street, Tallahassee, FL 32301. Based upon publicly available information, Perfect Privacy is the registrant and owner of Vegas. Perfect Privacy is the marketer for Vegas, including but not limited to with online media and other marketing campaigns to drive consumers to the Vegas website. Moreover, the purpose of the unauthorized spam texts at issue is to drive consumers to the Vegas website, thereby conferring a benefit to Perfect Privacy. Perfect Privacy is either an agent, principle, and/or affiliate of Vegas, and either participated in, authorized, ratified and/or acted in concert with Vegas and is responsible for TCPA violations that serve as the basis of this Complaint.

14.     Defendants operate or are affiliated with multiple auto-texting numbers and the Internet websites, including and www.vegassportsconsultants.com, and have a business model whereby Vegas operates an online odds and sports betting business, and Defendants send unsolicited texts offering free money to bet as a means to generate traffic to its online betting platform

4

15.     Defendants, directly or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

16.     At all times relevant, Plaintiff was a citizen of the State of Florida.  Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

17.     Defendants were, and at all times mentioned herein are, a corporation and "persons," as defined by 47 U.S.C. § 153 (39).

18.     At all times relevant Defendants conducted business in the State of Florida and in Broward County, within this judicial district.

19.     Defendants utilize bulk SPAM text messaging, or SMS marketing, to send unsolicited text messages, marketing and advertising Defendants' betting services, including at least 6 unsolicited text messages to Plaintiff.

20.     On or about June 20, 2017, at approximately 06:19 p.m. (EST), Defendants sent an unsolicited text message to Plaintiff's cellular telephone ending in "1200." This text message, read:

"Text "CASH" for the 3 Biggest MLB Selections in past 30 days!"

21.     Defendants used SMS "+1(702)-285-1997 to send this unsolicited text message to Plaintiff's cellular telephone. A screen shot of this unsolicited text is attached as "**Exhibit A**" for demonstrative purposes.

22.     On or about June 28, 2017, at approximately 05:45 p.m. (EST), Defendants sent another unsolicited text message to Plaintiff's cellular telephone ending in "1200." This text message, read:

"Our 4 Strongest MLB Plays in last 30 days! Text 'MLB' & Cash Big!"

23.     Defendants used SMS "+1(702)-285-1997 to send this unsolicited text message to Plaintiff's cellular telephone. A screen shot of this unsolicited text is attached as "**Exhibit B**" for demonstrative purposes.

24.     On or about July 24, 2017, at approximately 05:45 p.m. (EST), Defendants sent another unsolicited text message to Plaintiff's cellular telephone ending in "1200." This text message, read:

> "You only need 1 Strong Play a Day to make $$$.
> -Phillies under 9-
> And if you think our MLB info has been good then don't miss football
> www.vegassportsconsultants.com"

25.     Defendants used SMS "+1(702)-285-1997 to send this unsolicited text message to Plaintiff's cellular telephone. A screen shot of this unsolicited text is attached as "**Exhibit C**" for demonstrative purposes.

26.     On or about September 15, 2017, at approximately 12:44 p.m. (EST), Defendants sent another unsolicited text message to Plaintiff's cellular telephone ending in "1200." This text message, read:

> "www.goo.gl/VqQer
> 6 Big Plays this Week just posted online . . "

27.     Defendants used SMS "+1(702)-285-1997 to send this unsolicited text message to Plaintiff's cellular telephone. A screen shot of this unsolicited text is attached as "**Exhibit D**" for demonstrative purposes.

28.     On or about September 20, 2017, at approximately 06:12 p.m. (EST), Defendants sent another unsolicited text message to Plaintiff's cellular telephone ending in "1200." This text message, read:

> "We're sure you get many texts but unlike others we truly get inside info.
> TEXT "3" for Top 3 Football Plays!"

29.     Defendants used SMS "+1(702)-285-1997 to send this unsolicited text message to Plaintiff's cellular telephone. A screen shot of this unsolicited text is attached as "**Exhibit E**" for demonstrative purposes.

30.     On or about September 21, 2017, at approximately 04:57 p.m. (EST), Defendants sent another unsolicited text message to Plaintiff's cellular telephone ending in "1200." This text message, read:

> "We're sure you get many texts but unlike others we truly get inside info.
> TEXT "3" for Top 3 Football Plays!"

31.     Defendants used SMS "+1(702)-285-1997 to send this unsolicited text message to Plaintiff's cellular telephone. A screen shot of this unsolicited text is attached as "**Exhibit F**" for demonstrative purposes.

32.     Plaintiff was at no time given an option to "opt-out" of receiving future unsolicited text messages from Defendants.

33.     At no time did Plaintiff provide Plaintiff's cellular phone number to Defendants through any medium, nor did Plaintiff consent to receive such an unsolicited text message.

34.     Plaintiff has never signed-up for, and has never used, Defendants' services or products, and has never had any form of business relationship with Defendant.

35.     Through the unsolicited SPAM text message, Defendants contacted Plaintiff several times on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

36.     This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

37.     The telephone number Defendants called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

38.     This text message constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

39.     Plaintiff did not provide Defendants or their agents prior express consent to receive text messages, including unsolicited text messages, to his cellular telephone, pursuant to 47 U.S.C.

40.     The unsolicited text message by Defendants, or their agents, violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this class action under rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of itself and of a similarly situated "Class" or "Class Members" defined as:

> All persons within the United States who were sent a text messages substantially similar or identical to the text messages described in Paragraphs 19, 21, 23, 25, 27 and 29 of the Complaint by Defendants and/or their agents within the four years prior to the filing of the Complaint.

> Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

42.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

43.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendants' conduct consisted of a standardized SPAM text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

44.     Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's text and marketing records.

45.     Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

46.     **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a.  Whether, within the four years prior to the filing of this Complaint, Defendants or their agents sent any unsolicited text message/s (other than a message made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

b.  How the Defendants obtained the numbers of Plaintiff and Class members

c.  Whether the text advertisements sent to Plaintiff and Class Members contained the opt-out notice required by the TCPA and its regulations;

d.  Whether the text advertisements sent to Plaintiff and Class Members violate the TCPA and its regulations;

e.  Whether Defendants willfully or knowingly violated the TCPA or the rules prescribed under it;

f.  Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

g.  Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct;

h.  Whether Plaintiff and the Class are entitled to any other relief.

47.    One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

48.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

10

49.     Plaintiff and members of the Class each received at least one SPAM text advertisement, advertising the casino and betting services, which contained no purported opt-out notice, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

50.     **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

51.     **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the

11

Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

52.    **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted faxes

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 ET SEQ.**

53.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 52 of this Complaint as though fully stated herein.

54.    The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

55.    As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

56.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendants, as set forth in the Prayer for Relief below.

**COUNT II**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.**

57.     Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 52 of this Complaint as though fully stated herein.

58.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq. 45.

59.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

60.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendants, as set forth in the Prayer for Relief below

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendants for:

        a.   An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

        b.   Statutory damages of $500 per text;

        c.   Willful damages at $1,500 per text;

d.  A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e.  An injunction prohibiting Defendants from using an automatic telephone dialing system to text numbers assigned to cellular telephones without the prior express written consent of the called party;

f.  Reasonable attorney's fees and costs; and

g.  Such further and other relief as this Court deems reasonable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff is entitled to, and demands, a trial by jury.

Dated: June 21, 2018                          Respectfully submitted,

*/s/ Seth M. Lehrman*
Seth M. Lehrman, (FBN  132896)
E-mail: seth@epllc.com
**EDWARDS POTTINGER, LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Joshua H. Eggnatz (FBN 0067926)
E-mail: JEggnatz@JusticeEarned.com
Michael J. Pascucci (FBN  0083397)
E-mail: MPascucci@JusticeEarned.com
**EGGNATZ | PASCUCCI**
5400 S. University Drive, Ste. 417
Davie, FL 33328
Telephone: 954-889-3359
Facsimile: 954-889-5913

*Attorneys for Plaintiff*